[Cite as *State v. Lingg*, 2011-Ohio-4543.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                         :
                                C.A. CASE NO. 2011 CA 8

v.                                               :       T.C. NO. 10CR250

JUSTIN S. LINGG                                  :       (Criminal appeal from
                                                         Common Pleas Court)
    Defendant-Appellant                        :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___9th___ day of ___September___, 2011.

. . . . . . . . . .

CHRISTOPHER L. KINSLER, Atty. Reg. No. 0074289, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, 55 Greene Street, Xenia, Ohio 45385
      Attorneys for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Justin Lingg appeals from a judgment of the Greene County Court of Common Pleas, which revoked his intervention in lieu of conviction (ILC) and sentenced him on his guilty plea to an aggregate term of 22 months in prison. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} In May 2010, Lingg was indicted with eleven counts of receiving stolen property, ten counts of forgery, and one count of possession of heroin; all the charges were fifth degree felonies. Lingg subsequently moved for intervention in lieu of conviction. In September 2010, Lingg pled guilty to receiving stolen property (Count I) and forgery (Count 12). As part of the plea, the State agreed to dismiss the remaining counts and not to oppose ILC. The trial court accepted the guilty plea and granted ILC.

{¶ 3} As part of the court's judgment, Lingg was placed under the "control and supervision of the Greene County Adult Probation Department, subject to his acceptance of the conditions incorporated into this judgment." Condition No. 16 of the ILC order provided: "I understand a case plan may have been developed by the Adult Probation Department to assist in my rehabilitation. I understand I will be required to follow this plan as a condition of my probation and it is hereby incorporated into this order." Condition No. 26 required Lingg to serve a Greene County Jail sanction of 90 days.

{¶ 4} Soon thereafter, Lingg and the Greene County Adult Probation Department requested a modification of Lingg's jail sentence so that he could avail himself of Gateway Transitional Housing. The court granted the order, noting that the 90-day jail sanction was

imposed while Lingg awaited a bed at Gateway. The court ordered that Lingg be released to the Greene County Adult Probation Department for transportation to Gateway.

{¶ 5} On January 21, 2011, Jim Shanks, Lingg's probation officer, requested that a capias be issued for Lingg's arrest. Shanks stated that Lingg had failed to enter Gateway Transitional Housing and subsequently refused to enter the Salvation Army Booth House. Shanks stated that Lingg's conduct constituted a violation of Condition No. 16 of the court's order.

{¶ 6} A capias was ordered for Lingg's arrest, Lingg was ordered to show cause why his ILC should not be terminated, and a hearing was scheduled for January 26, 2011. After the hearing, the court found that Lingg had violated Condition No. 16 of his ILC by failing to enter Gateway Transitional Housing and the Salvation Army Booth House. The court ordered that Lingg's ILC be revoked and that his September 2010 guilty plea be filed.

{¶ 7} Lingg was subsequently sentenced to eleven months on each of the two counts, to be served consecutively for a total of 22 months in prison, plus restitution and costs. Lingg appeals from the trial court's judgment.

II.

{¶ 8} In his sole assignment of error, Lingg claims that the trial court erred in finding that Lingg "knowingly violated his intervention case plan."

{¶ 9} "ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense. R.C. 2951.041(A)(1). If, after a hearing, the trial court determines that an offender is eligible for ILC, then it shall accept the offender's guilty plea, place the offender under the general control and supervision of the appropriate

probation or other qualified agency, and establish an intervention plan for the offender. R.C. 2951.041(C) and (D). The intervention plan shall last at least one year, during which the offender is ordered to abstain from alcohol and illegal drug use, to participate in treatment and recovery-support services, and to submit to regular random testing for drug and alcohol use. R.C. 2951.041(D). If the offender successfully completes the intervention plan, the trial court shall dismiss proceedings against the offender without an adjudication of guilt and may order the sealing of records related to the offense. R.C. 2951.041(E). If the offender fails to comply with any term or condition imposed as part of the intervention plan, the court shall enter a finding of guilt and impose the appropriate sanction. R.C. 2951.041(F).

{¶ 10} "'In enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime.' *State v. Shoaf* (2000), 140 Ohio App.3d 75, 77, 746 N.E.2d 674 (referring to a previous, but similar, version of R.C. 2951.041). R.C. 2951.041 is not limited to offenders charged with drug offenses. Rather, any offender charged with any qualifying offense may be eligible for ILC so long as the trial court has 'reason to believe that drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior.' R.C. 2951.041(A)(1). ILC is not designed as punishment, but rather as an opportunity for first-time offenders to receive help for their dependence without the ramifications of a felony conviction. *State v. Ingram*, Cuyahoga App. No. 84925, 2005-Ohio-1967, 2005 WL 977820, ¶13." *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶9-10.

{¶ 11} We review the trial court's revocation of ILC for an abuse of discretion. An

abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 12} Three individuals – Scott Berry, Jim Shanks, and Melissa Litteral – testified for the State at Lingg's revocation hearing. Berry, a pretrial probation officer for the Greene County Adult Probation Department, testified that Lingg had signed a copy of the ILC conditions at the hearing granting ILC. That same day, Berry read and briefly reviewed the conditions of ILC with Lingg. A copy of the conditions of his ILC was also sent to Lingg at the jail.

{¶ 13} Berry stated that, pursuant to Condition No. 16, a case plan was developed for Lingg. The main goal of the case plan "revolved around trying to find him adequate and suitable housing." Berry indicated that the initial idea was for Lingg to receive Community Action Partnership (CAP) Housing in Greene County; Lingg preferred CAP Housing, and Berry stated that an individual's preference does matter to the probation department. Berry further stated, however, that there was a substantial wait list for that program, and Lingg continued to be on the wait list for CAP Housing at the time of the revocation hearing.

{¶ 14} Berry testified that, due to "a matter of [CAP's] availability," he personally contacted Gateway House in Dayton and got Lingg approved for that program in November 2010. According to Berry, Gateway House "is a program that offers housing for a period of time. It does employment training, they have groups for mental health, they have groups for drug and alcohol. They have just about anything one would need." (Lingg had issues with heroin abuse.) Berry stated that he had previously talked with Lingg about Gateway House, CAP Housing, and many other places.

{¶ 15} Berry testified that, on November 16, 2010, he picked up Lingg at the Adult

Detention Center (ADC) and transported him to Gateway House. Berry talked with Lingg about Gateway House in detail during the drive. As they neared Gateway House, Lingg indicated that he would not get out of the car and stated that he "had no interest in going to the Gateway House." Lingg had stated that Gateway House was in a "bad part of town" and that he "didn't feel comfortable with it." Berry explained to Lingg that this was part of his case plan and that his ILC could be revoked if he refused to go to Gateway House; Berry told Lingg that he would have to review it with the judge. After Lingg refused to enter Gateway House, he was returned to ADC.

{¶ 16} Berry testified that Melissa McFarland, who had evaluated Lingg for ILC eligibility, continued to talk to CAP Housing for Lingg, and McFarland took Lingg to an orientation there. However, no room was available for Lingg at that time.

{¶ 17} In January 2011, Berry contacted Booth House and obtained approval for Lingg at that facility. Probation Officer Jim Shanks testified that he and McFarland were asked on January 21, 2011 by Melissa Litteral, Director of the Greene County Adult Probation Department, to "go out to ADC, pick up Mr. Lingg and transport him to the Booth House in Dayton." When Shanks and McFarland arrived at ADC, they informed Lingg that Booth House had a bed available and that they were going to take him there. According to Shanks, Lingg responded that he did not want to go to Booth House because "I don't want to have to abide by the rules over there or go through the programs that they have." Other inmates at ADC had told Lingg that they did not like Booth House. Shanks did not tell Lingg that he would be in violation of his ILC if he did not go to Booth House. McFarland left the room to call Litteral about the situation.

{¶ 18} Litteral testified that she spoke with Lingg on the telephone and asked him if he

had the opportunity to understand that the department was trying to find him housing and what Booth House was. Lingg told Litteral that he had just found out about Booth House and had not had time to research it. Litteral asked Shanks to bring Lingg back to the probation department so she could speak to him in person.

{¶ 19} Litteral testified that Lingg "kept saying that he was on intensive probation, which he was not. He's on ILC." Litteral and Shanks both indicated that Litteral had asked Lingg if he had a copy of his conditions of ILC, and Lingg pulled them out of his back pack. Litteral stated she went over the conditions "very carefully" with Lingg, because she felt he was "a little confused on his responsibilities." Litteral explained to Lingg that "one of the reasons that we were doing this was because he did not have housing and we needed to work on his case plan." Litteral explained the importance of having housing and that this was part of his case plan. She discussed Gateway Housing and Booth House. Litteral informed Lingg that there were rules associated with the programs. Litteral asked Lingg if he had other housing alternatives, and he responded that he did not.

{¶ 20} After emphasizing that housing was part of his case plan, Litteral offered Lingg the opportunity to go to Booth House, and she discussed the Greene Leaf program at the jail. Litteral testified that Lingg "was not amenable to any of those suggestions. He wanted to have time to research it. And he didn't realize at that point, I think in his mind, you know, as part of his case plan, *** he needed to follow these and it wasn't really – it's up to him to have some input, but when it comes to housing, it's our job to make sure he has a stable environment to help with his ILC success." Shanks testified that Lingg had expressed that he "would rather just go to prison." Shanks and Litteral both testified that Lingg was informed in Litteral's office that he was in violation of Condition No. 16 of his ILC.

{¶ 21} Lingg testified on his own behalf at the revocation hearing. Lingg stated that Berry had not reviewed all of the conditions with him, and he (Lingg) was "very vague and unsure of" the ones he had reviewed. Lingg did not understand that the case plan involved going to whatever housing the probation department found for him. Lingg further testified that he was given no warning or explanation prior to being taken to Gateway Housing. Lingg objected to Gateway House because it was located in an area where he had bought drugs before. When he refused to go, Berry had told him that "it was simple, if I didn't want to go there, he [Berry] was just going to put me in on a probation violation."

{¶ 22} As to Booth House, Lingg testified that "[t]hey woke me up, told me to pack it up. I changed out, and no information was given to me. I started asking questions, 'What is Booth House? Where is it at?' He just simply told me that it was ran by the Salvation Army and it was down in Dayton, and that was all the information provided to me." Lingg explained that he wanted to research it further before he made a decision. Lingg indicated that he spoke with Litteral on the telephone, and he also told her that he didn't have enough information. Lingg testified that Litteral responded that she "had no option but to release me." Instead, Lingg was transported by Shanks to Litteral's office.

{¶ 23} Lingg stated that Litteral explained to him that "she had no choice but to violate my probation because I turned down two housing options, after I explained to her that nobody informed me on the case plan or anything like that. I didn't even understand that I was violating my probation because I hadn't even been out of jail." Lingg stated that he was not trying to be difficult, but he was not told "up-front" that he had no say in his housing. Lingg stated that he understood that "housing has been the issue the whole time," but he did not understand that it would be a violation if he refused housing options that were provided to

him. Lingg testified that he had no opportunity to correct the situation once he learned he was violating his ILC.

{¶ 24} Based on the record, the trial court did not abuse its discretion when it revoked Lingg's intervention in lieu of conviction, filed his guilty plea, and sentenced him to prison. Lingg acknowledged during his testimony that he needed housing before he could begin treatment for his drug addiction and that he had no "residence to go to to get out of jail." Berry testified that, after Lingg refused to go to Gateway Housing, he explained to Lingg that this was part of his case plan and his ILC could be revoked. Lingg similarly testified that Berry had said that he (Berry) would submit a "probation violation" due to his (Lingg's) failure to enter Gateway Housing. Despite these warnings from Berry, Lingg later declined the opportunity to go to Booth House, and he told Litteral during their meeting that he did not want to the do the Greene Leaf program. Lingg further admitted that, during that meeting, he might have told Shanks and Litteral that he "would rather just go to prison."

{¶ 25} Lingg cites to *State v. Abdalla*, Montgomery App. No. 22696, 2009-Ohio-1941, for the proposition that minor violations of the conditions of ILC are not a proper basis for revocation of ILC. In *Abdalla*, the trial court revoked the defendant's community control sanctions based upon his failure to pay attorney's fees, which were to be paid as part of his supervision fees. We reversed the trial court's order, holding that the failure to pay such fees was not a proper basis for revoking Abdalla's community control.

{¶ 26} *Abdalla* is inapposite. *Abdalla* involved the revocation of community control sanctions, not ILC. And, our holding was based on R.C. 2951.021(A)(4), which provides: "The failure of an offender to comply with a condition of community control that requires the offender to pay a monthly supervision fee and that is imposed under division (A)(1) of this

section shall not constitute the basis for the modification of the offender's community control sanctions *** but may be considered with any other factors that form the basis of a modification of a sanction for violating a community control sanction under those sections." This provision and thus *Abdalla*'s holding are inapplicable to Lingg's circumstances.

**{¶ 27}** Lingg's assignment of error is overruled.

III.

**{¶ 28}** The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and CANNON, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Christopher L. Kinsler
Elizabeth A. Ellis
Brock A. Schoenlein
Hon. Michael A. Buckwalter

| | |
|---|---|
| Case Name: | *State of Ohio v. Justin S. Lingg* |
| Case No.: | Greene App. No. 2011 CA 8 |
| Panel: | Grady, Froelich, Cannon |
| Author: | Jeffrey E. Froelich |